The United States Court of International Trade, Judge Rustani, has been with us all week, and we really appreciate her coming down here to help us decide these appeals. And we have three of them on the docket this morning. And the first is Frazier v. United States. And I see Mr. Robio and Mr. Jones are here for the appellants. Mr. Mindell is here for the appellee. And I think you're going to go first, Mr. Robio. Mr. Robio May I please the Court? My name is Louis F. Robio, and together with Craig Jones, we represent the plaintiff appellant Alnese Frazier and the three minor children of the decedent Melvin Brunel III. This matter is one of first impression for this Court. The case addresses the reckless use, misuse, and abuse of governmental power. The United States owed a duty to Mr. Brunel and to the public at large to protect them from the foreseeable criminal acts of its confidential informant, Manny Chopaev, and it failed in that duty. It breached the duty and approximately caused the death of Melvin Brunel III. Only if there's a special relationship between the government and this confidential informant. Which is determined by the degree of control that the government has over him, according to Georgia law, right? Correct, Your Honor. Well, I only see one other case where Georgia has found that there was such a special relationship relating to a physician and a patient. And Georgia has never before found a special relationship. You're asking us to extend Georgia law beyond, what is it, Bradley Center versus Wessner? Yes, Your Honor. I'm asking you to consider that the law and the control required under Bradley Center versus Wessner is not the degree of control that has to be particularly confinement or restraint of an individual. I'm saying that the Court's reasoning in Bradley Center versus Wessner clearly opens the opportunity for a case such as this. I'm also saying that the Georgia Court has never, never, from what I can see in the history of this Court, ever dealt with a case of the complexity and disturbing continence of this type of case. So every time a confidential informant goes out and does harm to others, FBI is liable? No, Your Honor. What I'm saying to you is that under the facts and circumstances of this case, we had serious, serious violations of mandatory policy, DOJ and FBI policy, in which starting from the recruitment, the use and the supervision of this particular informant and the supervision of the FBI agents themselves. This case is so far off the path that the only other cases that I've ever seen that were similar were cases from the First Circuit involving the infamous James Whitey Bulger and Stephen the Rifleman Fleming. Let me ask you this. You know, I think you can go beyond the confinement or the doctor-patient, perhaps if you have some particular way of controlling this person. But for these particular acts, he wasn't under the control of the police officers. He wasn't working for them with a promise of some leniency or something on these particular, the particular acts that led to the unfortunate death here. Your Honor, I disagree with that, too. Okay, well, explain to me how they were controlling him to the extent that it would be considered a special relationship. Mr. Chopaev was controlled by them, not in the normal sense, as we argued in the brief. He was under their control because he was supposed to have been deported when he was released from prison in 2008. The FBI decided to forget about that. He was also not supposed to be used as a public informant, as a confidential informant for the government, without the permission of Judge Cooper. Okay, well, the FBI isn't in charge of whether he's deported or not, are they? Correct. However, their policies require that they investigate and look into whether or not he is suitable to be a confidential informant. They totally disregarded that. They just went outside of that totally and just used him as a CI in total violation of mandatory policies. And the control that's exhibited here on him was not only that, but it was his immigration status. Our argument is this. The greatest gift we have in this country is life, liberty, and the pursuit of happiness. If someone threatens your liberty or your freedom or your pursuit of happiness, you are under their control. It's happened throughout the history of the United States. What happened, Your Honor? Well, the FBI would have to violate his life, liberty, or pursuit of happiness, in your view, for the informant to be under the FBI's control. I don't see the logical connection. Well, the logical connection is this, Your Honor. They allowed him to perpetrate any type of crime they wanted him to do for their own purposes. So their control was related to, we want to keep under order what we are doing. We don't want this disrupted. So they used the control to him and say, you keep doing what we want. As Your Honor well knows in this case, there were payments to the, excuse me, Judge. They knew he was out there committing crimes, but there isn't any allegation in the complaint that they knew that he was going to participate in a murder for hire. I don't believe that's absolutely necessary, Your Honor. I think they knew that he had the propensity to commit crime. He didn't say which particular crime. It doesn't have to be this specific crime. In this particular case, he aided and abetted in the murder of Melvin Vanell III. He created a criminal act. They know he had the propensity to commit these acts. It's clearly foreseeable that he would do this. So under Georgia law, there would be enough control over him to make the FBI responsible for whatever crimes he committed out there, whatever harm he did to third parties? Technically, it could under the facts of this case because of how far they allowed him and with impunity to create and argue these, I mean, to get involved in these criminal acts, Your Honor. I think under Georgia law too, and the Georgia law, if it wasn't the case, if we look back, was based on the second torts, section 315A, which has now been replaced by torts third, section 41A. And there it's specifically explained that the type of control required is some degree of control, not the absolute degree of control required under the Wessner cases and the progeny. All of the cases that we see cited by the government and by the court. Right. But we're looking at Georgia law and Georgia law in a lot of other scenarios has said, you know, these relationships don't fall within the special exception. And they've only done it one time with regard to the physician-patient relationship. And what that suggests is that Georgia requires a great deal of control. They did. A great deal of control. And so that's what, I mean, I think that's what, for me, this case comes down to whether or not you have allegations in your complaint sufficient to allege that you fall within that exception because the government exercised a great deal of control over the confidential informant. Your Honor, I have to disagree. I don't believe that's what the cases say. I think if the cases were, if the court, Georgia Supreme Court was faced with the facts and circumstances of this case and everything then went on, I feel very confident in saying that they would find that there is a legal duty owed by the government here in this particular case. Because we're looking at the extension of the law and the growth of the law since 1982. Should we certify the issue to the Georgia Supreme Court? I believe that's an alternative, Your Honor, yes. Because this question is up in the air as to whether Georgia court law applies. Rather than just affirming the district court, give us the opportunity to certify this to the Georgia court and let them make the decision because based on some of their cases and the facts of this particular case, I firmly believe that they will accept that there is a duty here. But if we think Georgia requires a great deal of a substantial degree of control, there's no need to certify the issue to the Georgia Supreme Court. I didn't hear you, Your Honor. If we think that, if we look at Georgia law and we come to the conclusion that Georgia requires a great deal of control based on the prior cases in Georgia, then there's no need to certify it to the Georgia Supreme Court, is there? If that's what you find. If there's no doubt in your minds about the applicability of the law as we argued in our briefs and on a motion to certify, I can't disagree with that, Your Honor. But I still think certification would be the proper approach because there is question here. I think there's serious questions when you look at these facts and circumstances. Nothing has happened like this in Georgia or before this court or before any of the district courts in Georgia. This is the first opportunity that Georgia would have for this. Well, I hate to open the floodgates argument, but if that's the case, I can't imagine that the FBI would be responsible for all harm, any harm caused to third parties by confidential informants. That would be an opinion of monumental proportions, wouldn't it? I don't believe the policy argument works here, Your Honor. I think what happens is, as it did in Trammell and the other cases, those are policy decisions. The policy decisions in here, how many cases have come out of the Bolger-Fleming case? Almost the only ones were the ones that happened with those specific informants. There's been nothing else that's come out of that. So the cases that would apply to this type of liability would be extremely limited. Extremely limited because nothing else has happened. There hasn't been one here. There hasn't been one in the other circuits. But what we have is the First Circuit law because there's such egregious opportunities. I would like to say, Your Honor, that we believe that we have pledged sufficiently that a plausible argument for a plausible claim for negligence, wrongful death, and deliberate indifference in this case. Thank you. Thank you. So is Mr. Jones? Mr. Jones isn't going to argue, correct? No, just the rebuttal. Okay, the rebuttal. All right. Mr. Mendel. Excuse me. Good morning. May it please the Court. My name is Gabriel Mendel. I represent the United States of America, aptly in this case. The allegations in this case are undoubtedly tragic. But the bedrock legal principle that governs the case under Georgia law is that there is no duty to prevent the harm caused by third parties to others. That is the basis on which the district court properly found that plaintiffs failed to allege any legal duty owed by the United States and therefore failed to meet the first element of her claims for negligence. Well, suppose you're an agent acting in the scope of your duties to your principle. All right. If we were dealing with an employee or an agent, be— Well, could you call a C.I. an agent? No, Your Honor. As our brief lays out, it's been made very clear, black-letter law, that confidential informants, even if they're paid, are not employees, are not agents of the United States for purposes of tort liability. And that's part of the reason why plaintiff never relied on that argument and instead has to rely, I think, without any dispute, entirely on this special relationship exception. Which is articulated, as the court knows, by the Georgia Supreme Court in Bradley Center in 1982. And which this court itself recognized in the Douglas Asphalt v. Core case from 2000. As I understand Appellant's position, it is that this was not the traditional C.I. relationship with law enforcement. That by protecting him from criminal prosecution, controlling him by not deporting him, that it's a step beyond the traditional association. Your Honor, I agree. The allegations are strongly that this was an unusual relationship and troubling, frankly, in many respects. But the aspects of it that are unusual or that are troubling are not material to the dispositive legal question, which here is the question of control. As this court recognized and as Bradley Center and its progeny laid out, that's a two-part test. There's the question of control and there's the question of foreseeability. Plaintiff, in a briefing and an argument, places a lot of the emphasis on the foreseeability. But we didn't move to dismiss on the foreseeability aspect. I think that would have been a difficult argument at a motion to dismiss stage. Instead, our argument is entirely on control. And as Judge Wilson recognized, in 35 years since Bradley Center, there's two cases in which a special relationship was found. One was Bradley Center itself, where you have an institutionalized mental health patient who is released on an unrestricted pass after threatening to kill his wife and then goes that weekend and kills his wife. And the second was associated health systems, which involved a nursing home resident who assaulted another resident. And the court in that case emphasized that the nursing home defendant had both statutory and contractual duties of care over its residents. And that's it. In the 35 years since, numerous courts in a wide range of factual scenarios, both inside the medical context and outside, including this court, multiple district courts in the Northern and Middle District of Georgia, and the Georgia Court of Appeals on numerous occasions, have found no special relationship existed because that requisite kind of control was absent from the facts. Of course, the control could exist, possibly. I mean, it's not beyond comprehension that the FBI did have some degree of control over the confidential informant that would bring the plaintiff into compliance under Florida law, right? Under Georgia law, Your Honor, no. There's no allegations in this complaint. What if someone in the FBI knew that the confidential informant was out there planning a murder? So, Your Honor, the knowledge aspect goes to the foreseeability question. And plaintiff has to properly allege both. That the individual, this third-party tortfeasor was under our control and that the tort he is alleged to have committed was foreseeable. We're not raising questions about foreseeability. The control aspect, it has to be physical custodial control to restrain his liberty. And there's no allegations that come close to that. Right. And we're at the 12B6 stage. We're at the motion to dismiss stage. And so, isn't it possible that discovery could clarify the degree of control if they're required to file an answer? Your Honor, this court in, for example, Carter v. DeKalb County has made clear discovery follows the filing of a well-pleaded complaint. It's not a device to enable the plaintiff to make a case when his complaint has failed to do so. The district court properly assumed all of the allegations in the complaint to be true. In other words, if we went into discovery and plaintiff proffered undisputed evidence of everything he alleges in his complaint, he would still fail as a matter of law. That's the exact circumstance in which a motion to dismiss is proper. Plaintiff had two opportunities to amend her complaint in the face of the same motion to dismiss that pointed out the deficiencies that still exist in the court is considering today and was unable to make any allegations, even if assumed to be true, that could meet the standard. And I think it's important to recognize that the word control here has to be understood in the specific legal context that the Georgia Supreme Court and the Georgia courts have applied it. It is not a synonym for influence or persuasion, which is what plaintiff is trying to make it. And there's a common sense appeal to that. Of course, the FBI has, quote unquote, control over its confidential informants. Most confidential informants are in that position because they are potentially subject to deportation or some prosecution. But the Georgia courts, the case law has made clear that's not the kind of control we're talking about. So, for example, in the Trammell versus Bradbury case, the Georgia Court of Appeals considered the relationship between a father and his adult son. And what plaintiffs there wanted to argue is that this father had the ability to withhold his son's housing, his income, his vehicle, very powerful levers of persuasion. But the Georgia Court of Appeals said that's not the kind of control that's required. It has to be actual assumption of physical control. Look at Grajalva versus United States involving an Air Force officer and the enlisted airmen. Again, the court there recognized this is a military authority context. This officer can issue lawful orders to the airmen. Nevertheless, that's not the kind of control that's required. Orlando's versus Rockdale County, another Georgia Court of Appeals case, where a police officer who's directing traffic at an intersection encounters a drunk driver who approaches and speaks to him, visibly intoxicated. No dispute that the police officer had it within his authority to arrest her, detain her, get her off the street. He chooses not to do so. Later that evening, she causes a collision, killing the plaintiff's husband. The court there recognized he had the authority to arrest her, but that wasn't the kind of control that was required. This physical custodial control. And the Trammell court, going back to that case, made clear that the analysis, even outside of the mental health context, it has to be a level of control analogous to the right to involuntarily institutionalize a patient. And that's important because post-Bradley Center, there were a number of other cases from the mental health context where patients had gone on to murder their spouses or siblings. And the Georgia Court of Appeals, and here I'm thinking of Ermutlu and Baldwin and Kepler, said that simply because they were outpatients, they were not institutionalized under the physical control of the doctors, there's no special relationship. That alone is enough to distinguish it. So Judge Wilson, as you recognize, this is a very heightened standard of control. And there is 35 years of precedent here on which this court can rely in making its decision. Now, there's no doubt the unique facts of this case have never been brought before this court or any court in Georgia. But that is going to be true of virtually every FTCA case that is brought in federal court. And if the unique nature of the facts was sufficient to justify certification, then certification would exist in virtually every case. That's not the standard. Instead, the question is, is there controlling precedent in the Georgia courts that answers this question? Or is there substantial doubt about a question of case law? Here, there is no such doubt. There is abundant case law, as this court itself recognized in the Douglas Asphalt case in which it applied Bradley Center and its progeny to a unique set of circumstances. There, the question was the relationship between the Georgia Department of Transportation and a materials testing company that it contracted. Now, those facts are far distinct from the case here, but they were also far distinct from any case that had ever been heard in a Georgia court. Nevertheless, this court had no problem applying the Bradley Center precedent and its progeny to those facts and finding that no special relationship existed. Similarly, plaintiffs' reliance on First Circuit law and the restatement of torts is improper. As a threshold matter, the First Circuit cases were applying Massachusetts law, which was proper because those cases arose in Massachusetts. Similarly, the district court here applied Georgia law. Moreover, the cases that we've cited, and I think we have a footnote on this, I believe it's footnote four, the Landis decision, the dissent in that case heavily relied on Massachusetts law. Again, the dissent, because these two states have taken divergent approaches to this issue. There's no question that Georgia law governs this case and that under Bradley Center, plaintiff fails to allege necessary facts to show control. For those reasons and those reasons, and those articulated in Apley's brief, the United States respectfully requests that the district court order be affirmed. Thank you, counsel. We'll hear from Mr. Jones. Thank you, Your Honor. May it please the court. One of the cases that the government mentioned is the Landis versus Rockdale County case, which involved a 15-minute traffic stop on the side of the road. This case involves a 25-year relationship between an informant and an FBI agent. They gave each other expensive gifts. They attended sporting events together. They helped each other with their own specific needs. And we've alleged that there was a benefit. There was quid pro quo that was paid. And in fact, a case that is part of the record of this court now in our, it's a notice of supplemental authority that we filed. We filed a couple of them. I believe it's the United States versus Bryant case. This is a criminal case in the federal court down in Florida. New trial was granted because of the misconduct of the very same FBI agent who's been sued in this case. And the opinion, a 76-page opinion in that case, indicates that there was testimony that this informant, Mr. Chopaeff, was being paid by the FBI and that the FBI agent had advanced knowledge of the murder being committed. We, in fact, alleged- Is this a part of this record? It's a case before the court. We have alleged, I believe it's paragraph number 108 of the complaint that the FBI and specifically Agent Jackson were informed of the intention to murder Mr. Vernell. There's an allegation, refresh my recollection. There's an allegation in the complaint. The word is informed and- An FBI agent knew that this confidential informant was going to be involved in this murder for hire? Yes, as he knew of other crimes that were being committed. The murder for hire was actually facilitated by the GPS tracking devices which the FBI unlawfully authorized Mr. Chopaeff to put on vehicles to do what they themselves were not allowed by law to do. And in fact- I thought those were Mr. Chopaeff's own GPS devices. They were, but the purpose- Why would someone renting a car who's a 25-year informant for the FBI need to put GPS devices on cars he was renting to people who were laundering drug money? Well, he's in the rental car business and he wants to know where his rental cars are. He got his own GPSs for his own cars, right? With the advanced knowledge and blessing of the FBI who benefited from exchange of information about that over years and years, Mr. Chopaeff could tell them who was moving drugs where and when and he could decide who he wanted to let the FBI know and who he didn't want to let the FBI know. Counselor, I'm looking at paragraph 108. What did you say it said? That's one place I've seen. Maybe other references, but it says here, based upon the special and close relationship between Chopaeff and Jackson and the Atlanta FBI office, it is reasonable to believe that Chopaeff had informed Jackson of the dispute between White and Vernell and that White and his associates intended to seriously injure and or kill Vernell and Jackson failed to act to prevent Vernell's death.  Is that what you're- I may be looking at the wrong one. Let's see what I'm looking at. That's okay, we can- I'm actually looking at the- Yeah, I'm looking at the second amended complaint to paragraph 108. So it's reasonable to believe that he had informed. So what you're saying in this is that because they had a very close relationship, including a social relationship and had known each other for a long time, it's reasonable to believe that he had informed Jackson. So you're not saying that he had informed. Well, testimony not a case in the case he has. And remember, we're obviously constrained by the pleadings themselves. However, the plausibility question, you can take into consideration other information in the record, whether it's part of the pleadings or not. In regard to the advanced knowledge of the crime, that's not strictly a foreseeability issue. It also weighs on the issue of control. I mean, if you have enough of a confidential relation with someone that you were willing to tell them that somebody's about to be whacked, you know, that would suggest a very close relationship. And Bradley v. Wessner and the restatement, both of them say that physical custody is an example of control that's required, but it's not the only way that such control can be required. And all we're asking for is the opportunity to conduct discovery to determine what actually happened. They already know they can't do this in the First Circuit, and they're going to keep doing it in the Eleventh Circuit unless they get some guidance from this court. Thank you. Thank you, Mr. Mendo. Thank you, counsel. Thank you.